```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION

LARRY D. STORIE,                  )
                                  )
            Plaintiff,            )
                                  )
       v.                         )      No. 4:06 CV 1238 DDN
                                  )
DUCKETT TRUCK CENTER, INC.,       )
ST. PAUL MERCURY INSURANCE CO.,   )
and                               )
BLAINE LAWSON,                    )
                                  )
            Defendants.           )
```

**MEMORANDUM AND ORDER**

This action is before the court on the motion of plaintiff Larry Storie for partial summary judgment. (Doc. 60.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). A hearing was held on December 7, 2007.

**I.   BACKGROUND**

Plaintiff Larry D. Storie brought this action against defendants Duckett Truck Center, Inc. (Duckett), St. Paul Mercury Insurance Co. (St. Paul Mercury), and Blaine Lawson in connection with the purchase of a 2004 Western Star truck tractor ("tractor" or "vehicle"). The tractor had been involved in a serious accident in November 2003 in which it was substantially damaged and the driver killed. Storie alleged he purchased the tractor from Duckett in June 2004 without knowledge of the extent of damage from the accident. Storie also alleges the defendants made fraudulent and negligent misrepresentations and omissions of facts regarding the condition of the tractor before he purchased it. Storie also alleges the defendants violated Indiana and Missouri law by failing to apply for and obtain a salvage title before he purchased the vehicle. The defendants deny the allegations in their respective answers.

The court has original jurisdiction based on the diversity of the parties' citizenship and because the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).

## II. UNDISPUTED FACTS

On November 17, 2003, the driver of a 2004 Western Star tractor trailer was involved in a fatal accident in Indiana. The driver was killed when he applied his brakes abruptly which caused a portion of his cargo to shift forward through the back of the tractor's cab. (Doc. 1, Ex. 4.) Parrett Trucking, Inc., a Tennessee company, owned the Western Star tractor and was insured by defendant St. Paul Mercury Insurance Company. (Doc. 1, Ex. 4; Doc. 61, Ex. 6 at 1.) St. Paul Mercury determined that the Western Star tractor was a total loss, but found that the trailer was repairable. (Doc. 61, Ex. 4 at 1.) St. Paul Mercury paid the insurance claim and acquired the vehicle on January 14, 2004. (Doc. 61, Ex. 2 at 1, Ex. 7 at 1.) On March 19, 2004, the state of Tennessee issued St. Paul Mercury a certificate of title for the Western Star tractor. The certificate of title indicated the vehicle was new and had been previously titled in Tennessee. (Doc. 61, Ex. 2 at 1.)

On April 13, 2004, St. Paul Mercury sold the Western Star tractor to Randy's Auto Sales, LLC, (Randy's) of Shelbyville, Indiana, for $10,500. (Id. at 2.) Before selling the vehicle, St. Paul Mercury did not apply for a salvage title. (Doc. 46 at ¶ 22.) Nonetheless, St. Paul Mercury's internal notes indicated it would be sending Randy's a salvage title. (Doc. 61, Ex. 5 at 1.) The internal notes state, in relevant part, "REVIEWED FILE AND RELIZED [sic] I DID NOT REQUEST A SALVAGE TITLE FOR 3 RD PARTY BUYER . . . ." (Id.) On April 13, 2004, St. Paul Mercury sent a letter to Randy's stating, "Please find enclosed the Salvage Title of the total loss vehicle: 2004 WESTRN STR TRACTOR . . . ." (Doc. 61, Ex. 6 at 1.) Randy's never received a salvage title from St. Paul Mercury. (See Doc. 46 at ¶ 22.)

Randy's Auto Sales thereafter sold the Western Star tractor to Westside Auto Parts, of Owensboro, Kentucky.[1] (Doc. 61, Ex. 2 at 2.)

---

[1] The number "24,000" is written by the transfer of title to Westside Auto Parts. (Doc. 61, Ex. 2 at 2.) The court infers from the record that that number is the vehicle's mileage, which was around

(continued...)

In turn, Westside Auto Parts transferred title to Duckett Freightliner of Farmington, Missouri. (Id.) Duckett paid Westside Auto Parts $32,000 for the tractor. (Doc. 55-11 at 1.) On June 15, 2004, Duckett transferred title to plaintiff Larry Storie of Belleville, Illinois. (Doc. 61, Ex. 2 at 2.)

Storie began looking for a new truck tractor sometime in May or June of 2004. As part of his search, Storie looked at close to a dozen different models of Western Star truck tractors. Among the vehicles, Storie found a new Western Star, similar to the one offered for sale by Duckett, which listed for $115,000 in Indiana. (Doc. 62, Ex. B at 6.) Ultimately, Storie purchased the subject 2004 Western Star tractor from Duckett. (Doc. 61, Ex. 1 at 1.)

Storie learned about Duckett's Western Star tractor on an Internet site and contacted Blaine Lawson, a Duckett employee, to inquire about the tractor. This conversation occurred about a week or two before June 11, 2004.[2] (Doc. 62, Ex. B at 5.) On June 11, Storie and his wife went to Duckett Truck Center to look at the Western Star tractor for sale. Storie met with Blaine and the two discussed the trade-in value of Storie's old tractor and the sale price of the Western Star. Before agreeing to the sale, Storie and his wife test-drove the Western Star. (Id. at 7.) When he was inside the vehicle, Storie noticed that some of the upholstery in the bunk area was falling, because the adhesive had come off. He also noticed an odor when he turned on the air conditioner. (Id. at 8.)

---

[1](...continued)
24,000 miles, and not the sale price. (See Doc. 62, Ex. A at p.44.) The certificate of title also indicates Randy's sold the vehicle to Westside Auto Parts on February 26, 2004 - in other words, before St. Paul Mercury sold the tractor to Randy's. (Doc. 61, Ex. 2 at 2.) An explanation of this discrepancy is unnecessary to the determination of the instant motion for summary judgment.

[2]During this conversation, according to Lawson, Storie asked why the vehicle's mileage was so low, and in response, Lawson stated the vehicle had been in an accident and there had been an insurance settlement. The topic of the driver's fatality did not come up. (Doc. 62, Ex. D at 2.) According to Storie, Lawson never told him the vehicle had been in a major accident or that the driver had been killed in the tractor. (Doc. 62, Ex. B at 11.)

After test-driving the Western Star, Storie and Lawson discussed the vehicle's warranty. (Id.; Doc. 62, Ex. D at 3.) The parties dispute what other topics Lawson and Storie discussed before the vehicle's sale.[3] After their discussion, Storie purchased the Western Star for $89,500. (Doc. 62, Ex. D at 2; Doc. 61, Ex. 1 at 1.) The bill of sale indicates Illinois would be the title state. (Doc. 61, Ex. 1 at 1.) The Western Star tractor had been driven close to 24,000 miles at the time of purchase. Given the million-mile benchmark for commercial truck tractors, the Western Star's mileage meant the vehicle was practically brand new. (Doc. 62, Ex. A at 2.)

Shortly after purchase, Storie experienced a number of mechanical problems with the tractor. Among the problems, he had to replace the EGR right side kit, the tie rod underneath the steering, the shock absorbers, the rear end sway bar, two injectors in the motor, and some of the tires. He also reported the wheel seals leaked, the headlights malfunctioned, the brake light malfunctioned, the ABS light malfunctioned, the fuel gauge malfunctioned, the turbo sensors went out, the V pods went out, and the three-axle alignment required servicing. (Doc. 62, Ex. B at 9-10, 12.) Some of the repairs were covered by warranty, while others were not. Storie estimated spending at least $10,000 on repairs. (Id. at 9-10.) Storie was not involved in any accidents while he drove the tractor. (Id. at 11.)

The exact source of any of the mechanical problems is hard to pinpoint. In his deposition, Robert Carmon, the plaintiff's expert,

---

[3]According to Storie, Lawson said the vehicle was bumped at a truck stop, but did not disclose that the Western Star had been in a major accident and did not disclose that the previous driver had died in the vehicle. (Doc. 62, Ex. B at 8, 11.) Storie also remembers discussing the vehicle's DataStar computer system. (Id. at 9.)

According to Lawson, he and Storie climbed into the tractor and "I looked him [Storie] dead in the eye . . . and I said, listen, there was a fatality in this truck . . . ." (Id. at 3.)

According to James Ward, Duckett's policy was to always disclose to customers whether a vehicle had been rebuilt and to detail the extent of the actual repairs performed. (Doc. 62, Ex. A at 2.) According to Ward, Duckett was aware of the original driver's death when it purchased the Western Star. (Id. at 3.)

stated he could not be certain whether a particular problem was the result of the accident, or whether the problem existed when the vehicle was new. (Doc. 62, Ex. E at 6.)

Sometime in December 2005 or January 2006, Storie's wife, Nicole, purchased a Carfax report on the Western Star tractor. The Carfax report revealed the tractor had been in an accident. (Doc. 62, Ex. C at 2.) According to Larry and Nicole Storie, this was when they first learned of the vehicle's accident history. (See id.) On January 5, 2006, after discovering the accident on the Carfax report, Nicole Storie contacted St. Paul Mercury. Nicole Storie explained that she was the owner of a 2004 Western Star, the vehicle had been in an accident, and St. Paul Mercury's name was on the title. The representative from St. Paul Mercury told her the tractor should have been issued a salvage title and it should never have been on the road. (Doc. 62, Ex. C at 3.)

By December 2006, Storie had completely quit driving the Western Star tractor. (Doc. 62, Ex. B at 2.) To help meet his payments on the tractor, Storie leased the vehicle to Chad Malloy. Storie and his wife drew up three lease agreements, which Malloy signed in December 2006 and January 2007. Malloy leased the tractor for almost three months and paid Storie $1,500. This amount was less than what the agreement called for and Storie reclaimed the vehicle. (Id. at 3-4.) After Malloy returned the tractor, Storie surrendered it to the finance company, still owing $50,000 on the loan. (Id. at 4-5.) Storie did not try and sell the Western Star tractor. (Id. at 5.) The vehicle had 222,000 miles when Storie gave it back to the finance company. (Id. at 11.)

### III. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Devin v. Schwan's Home Serv., Inc., 491 F.3d 778, 785 (8th Cir. 2007). The court must view the evidence in the light most favorable to the nonmoving party and accord it the benefit of all reasonable inferences. Devin, 491 F.3d at 785. A fact is "material," if it could affect the ultimate disposition of the case, and a factual dispute is "genuine," if there is substantial

evidence to support a reasonable jury verdict in favor of the nonmoving party. Die-Cutting Diversified, Inc. v. United Nat'l Ins. Co., 353 F. Supp. 2d 1053, 1054-55 (E.D. Mo. 2004).

Initially, the moving party must demonstrate the absence of an issue for trial. Celotex, 477 U.S. at 323. Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in its pleadings but must instead proffer admissible evidence that demonstrate a genuine issue of material fact. Fed. R. Civ. P. 56(e); Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 800 (8th Cir. 2004).

## IV. DISCUSSION

In his motion for summary judgment, plaintiff Storie argues there are no genuine issues of material fact as to Count VII of his complaint, and therefore, he is entitled to judgment on this claim. (Doc. 61.) In Count VII Storie claims St. Paul Mercury failed to apply for a salvage title from any state in violation of the Indiana statutory Code § 9-22-3-3 and § 9-22-3-11. Storie claims damages, "[a]s a direct and proximate result of St. Paul's violation" of these statutes. (Doc. 1 at ¶ 72-80.)

In response, St. Paul Mercury argues there are genuine issues of material fact concerning whether St. Paul Mercury's failure to apply for a salvage title proximately caused Storie's alleged damages. Since factual issues of causation still exist, St. Paul Mercury argues summary judgment is inappropriate. (Doc. 62.)

On November 21, 2006, this court ruled orally on the record about the applicable rules of decision. The court has subject matter jurisdiction over the action because of the parties' diversity of citizenship and the amount in controversy, pursuant to 28 U.S.C. § 1332. When a federal court exercises diversity jurisdiction, it must "appl[y] the conflict of law rules for the state in which it sits." DCS Sanitation Mgmt., Inc. v. Casillo, 435 F.3d 892, 895 (8th Cir. 2006), cert. denied, 127 S. Ct. 193 (2006); Donovan v. Harrah's Maryland Heights Corp., 289 F.3d 527, 529 (8th Cir. 2002). In Missouri, a claim alleging a tort is governed by the Restatements 2d of Conflict of Laws § 145. See Kennedy v. Dixon, 439 S.W.2d 173, 184 (Mo. 1969); Goede v. Aerojet Gen. Corp., 143 S.W.3d 14, 24-25 (Mo. Ct. App.

2004); see also Thompson by Thompson v. Crawford, 833 S.W.2d 868, 870 (Mo. 1992). Under Restatement § 145, a court is under a duty to apply the law of the state that "has the most significant relationship to the occurrence and the parties . . . ." Id. Factors that the court should weigh in determining which state satisfies the most significant relationship test include: where the injury occurred, where the conduct causing the injury occurred, the legal domicile and residency of the parties,[4] and the place where the relationship between the parties is centered. Id.

Consideration of the Restatement factors indicates that Indiana law must govern this dispute. The accident which initially rendered the vehicle a total loss occurred in Indiana. Defendant St. Paul Mercury sold the tractor in Indiana, and the tractor was sold to an Indiana resident. Although St. Paul Mercury is a non-resident corporation, it has availed itself of the opportunity to do business in the state of Indiana, including the transactions that form the basis for the current lawsuit. Indiana is the state that has the most significant relationship to the matter under litigation, and therefore Indiana law must control.

Section 9-22-3-3 of the Indiana Code requires a certificate of salvage title for a motor vehicle, where an "insurance company has determined that it is economically impractical to repair the wrecked or damaged motor vehicle . . . and has made an agreed settlement with the insured or claimant."[5] Ind. Code § 9-22-3-3(a)(1); Allstate Ins. Co. v.

---

[4]For corporations, this information includes the place of incorporation and the place of business. See Inacom Corp. v. Sears, Roebuck & Co., 254 F.3d 683, 688 (8th Cir. 2001), quoting from Restatements 2d of Conflict of Laws § 145.

[5]Section 9-22-3-3(a) provides, in relevant part,

> A certificate of salvage title is required for a motor vehicle, motorcycle, semitrailer, or recreational vehicle that meets any of the following criteria:
>
> (1) An insurance company has determined that it is economically impractical to repair the wrecked or damaged motor vehicle, motorcycle, semitrailer, or recreational
(continued...)

Larkin's Body Shop and Auto Care, 673 N.E.2d 846, 847-48 (Ind. Ct. App. 1996). The insurance company must apply for a salvage title within 31 days after it acquires the ownership of the vehicle. Ind. Code § 9-22-3-11(b). A salvage vehicle is a motor vehicle that meets at least one of the criteria of § 9-22-3-3(a) of the Indiana Code. Ind. Code § 9-13-2-160.

It is undisputed that St. Paul Mercury settled the insurance claim on the tractor and acquired title to it. It then obtained a new vehicle title for the vehicle from Tennessee, where the tractor was registered, after the company determined that the vehicle was a total loss and economically impractical to repair. That said, because there are genuine issues of material fact regarding the causation of plaintiff's alleged damages, summary judgment is inappropriate.

Summary judgment is appropriate only where there is no issue of material fact. Devin v. Schwan's Home Service, Inc. 491 F.3d at 785. The pivotal issue of causation is at issue in this case and summary judgment is not appropriate. There may be more than one proximate cause for any given event. City of Indianapolis Hous. Auth. v. Pippin, 726 N.E.2d 341, 346-47 (Ind. Ct. App. 2000). In other words, unless only one conclusion can be drawn from the facts, the issue of proximate cause is a question of fact to be submitted to the jury. Id. at 347. Even the violation of a statute will not support liability for the injury to another unless the injury was, in some manner, the result of

---

[5](...continued)
vehicle and has made an agreed settlement with the insured or claimant.

(2) If the owner of the vehicle is a business that insures its own vehicles, the cost of repairing the wrecked or damaged motor vehicle, motorcycle, semitrailer, or recreational vehicle exceeds seventy percent (70%) of the fair market value immediately before the motor vehicle, motorcycle, semitrailer, or recreational vehicle was wrecked or damaged.

(3) The motor vehicle is a flood damaged vehicle.

Ind. Code § 9-22-3-3(a).

violating the statute. Town of Montezuma v. Downs, 685 N.E.2d 108, 112 (Ind. Ct. App. 1997).

In Count VII of his complaint, Storie alleges he was damaged as "a direct and proximate result of St. Paul's violation" of the Indiana statutes. Yet, Robert Carmon, Storie's expert, testified that he could not be certain whether a particular problem with the Western Star tractor was caused by the accident, or whether the problem existed when the tractor was new. Since the facts do not support a single conclusion as to the cause of the vehicle's mechanical problems, summary judgment is inappropriate under the circumstances. Pippin, 726 N.E.2d at 347.

For the benefit of future proceedings in this action, the issue remains as to what state St. Paul Mercury should have applied for a salvage title. "Indiana's vehicle titling laws expressly apply only to vehicles that are owned by Indiana residents and are to be operated within the state of Indiana." Riha v. State Farm Mutual Auto. Ins. Co., No. 1:06-cv-234-RLY-TAB, 2007 WL 42976, at *3 (S.D. Ind. Jan. 3, 2007). In Riha, the court granted the defendant's motion for summary judgment on the plaintiff's claim that State Farm had failed to obtain a salvage title as required by § 9-22-3-3. Id. at 3-4. In Riha, State Farm had not acquired the vehicle in Indiana, and the vehicle was not intended to be operated in Indiana when State Farm owned or disposed of the vehicle. Id. at 4.

In the current situation, St. Paul Mercury acquired the vehicle in Indiana. The vehicle was situated in Indiana when St. Paul Mercury acquired a new vehicle title for it. St. Paul Mercury then sold the vehicle in Indiana to Randy's Auto Sales, a company operating in Indiana. On the other hand, the Western Star tractor was titled in Tennessee at the time of the accident and there is no indication the title state changed until the sale to Storie. According to the bill of sale, Illinois would be the title state when Storie acquired the tractor.

Looking to Riha, Indiana law, and the Uniform Commercial Code (U.C.C.), Storie may not rely on § 9-22-3-3 as the state from which St. Paul Mercury should have obtained a salvage title. Indiana law speaks to goods covered by a certificate of title in statutes adopting the

-9-

U.C.C. Ind. Code § 26-1-9.1-303. In Indiana, motor vehicles are goods covered, and perfected, by a certificate of title. See Ind. Code § 26-1-9.1-316; In re Lipply, 56 B.R. 68, 70 (Bankr. N.D. Ind. 1985). And "[i]deally, at any given time, only one certificate of title is outstanding with respect to particular goods." Ind. Code § 26-1-9.1-303 (Comment 6); see also Farley v. Indiana, 163 N.E.2d 885, 886-87 (Ind. 1960) (affirming conviction of defendant who attempted to obtain a second certificate of title for his vehicle). In fact, an Indiana salvage title may be issued only after the vehicle's owner has surrendered the original certificate of title. Ind. Code § 9-22-3-4.

Motor vehicles, by their very nature, may be bought in one state, sold in another, registered in a third, and damaged in a fourth, creating a myriad of choice of law issues. See Lipply, 56 B.R. at 71. Fortunately, the UCC addresses this issue. See Ind. Code § 26-1-9.1-316 (Example 8). For example, if a debtor's vehicle is covered by a certificate of title issued in Illinois, the lender perfects a security interest by complying with Illinois' certificate-of-title statute. Id. If the debtor then moves to Indiana and applies for a certificate of title, then Illinois law ceases to govern perfection and Indiana law governs perfection. Id. (emphasis added). If, on the other hand, the debtor moves to Indiana but does not apply for an Indiana certificate of title, then Illinois law continues to govern. Id. Simply put, within the U.C.C., the law of the titling state governs. Id. "It is the certificate of title which should control notice to third parties . . . not registration . . . ." In re Males, 999 F.2d 607, 612 (2d Cir. 1993) (vehicle was titled in New Hampshire but registered in New York); see also In re Stanley, 249 B.R. 509, 517 (Bankr. W.D. Mo. 2000) (applying Kansas law of perfection where vehicle was registered in Missouri, but titled in Kansas).

Section 5 of the Indiana Salvage Motor Vehicle chapter seems to presuppose that the original titling state would also issue the salvage title. "A certificate of salvage title . . . must contain the following information: (1) the same vehicle information as a certificate of title issued by the department [Indiana Department of Transportation]." Ind.

Code § 9-22-3-5(1). Section 5 also requires that the "notation 'SALVAGE TITLE' [be] prominently recorded on the front and back of the title" – much like a secured party noting its lien on the certificate of title. Ind. Code § 9-22-3-5(2).

In this case, the Western Star tractor had been issued a Tennessee title and was sold in Indiana, after the accident in Indiana, without any changes in title. The cardinal question, therefore, is which state's vehicle salvage laws should apply when the vehicle's owner has not applied for a salvage title. As noted above, the law tolerates only one title for a motor vehicle. After considering Indiana's statutes, case law, and the U.C.C., the undersigned believes Indiana law would look to Tennessee's salvage title statutes, Tenn Code Ann. §§ 55-3-120(c),[6] 55-3-211(8),[7] to determine whether St. Paul Mercury should have applied for a salvage title after the vehicle was damaged.[8] Looking to the titling state would provide greater certainty in situations like

---

[6]The Tennessee salvage title statute, states, in relevant part,

(c) An insurance company that obtains title to a motor vehicle as a result of paying a total loss claim resulting from collision, fire, or water damage shall obtain a salvage title, flood title, or nonrepairable vehicle certificate from the department. The provisions of this subsection (c) shall not apply to vehicles ten (10) years old or older with a value of one thousand five hundred dollars ($1,500) or less.

Tenn. Code Ann. § 55-3-120(c).

[7]The Tennessee code defines a salvage vehicle, as,

[A]ny passenger motor vehicle which has been wrecked, destroyed, or damaged to the extent that the total estimated or actual cost of parts and labor to rebuild or reconstruct the passenger motor vehicle to its pre-accident condition and for legal operation on the roads or highways exceeds seventy-five percent (75%) of the retail value of the passenger motor vehicle, as set forth in a current edition of any nationally recognized compilation (to include automated databases) of retail values . . . .

Tenn. Code Ann. § 55-3-211(8).

[8]Coincidentally, Tennessee is where St. Paul Mercury applied for the replacement title for the Western Star tractor.

-11-

this, where a vehicle is insured and titled in Tennessee, damaged in Indiana, initially resold in Indiana, ultimately purchased in Missouri, and later operated by an Illinois resident. See In re Lipply, 56 B.R. at 71 (the U.C.C. exists to promote modern business practices and may be interpreted alongside the Indiana Motor Vehicle Code).

For the reasons stated above, the motion of plaintiff Larry Storie for partial summary judgment (Doc. 60) is denied.




/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**


Signed on December 13, 2007.