UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LARRY D. STORIE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:06 CV 1238 DDN |
| ) | |
| DUCKETT TRUCK CENTER, INC., ) | |
| ST. PAUL MERCURY INSURANCE CO., ) | |
| and ) | |
| BLAINE LAWSON, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This action is before the court on the motions of defendants Duckett Truck Center, Inc. and Blaine Lawson (Doc. 54) and St. Paul Mercury Insurance Co. (Doc. 57) to strike the opinions of plaintiff's expert. A hearing was held on December 7, 2007.

## I. BACKGROUND

Plaintiff Larry D. Storie brought this action against defendants Duckett Truck Center, Inc. (Duckett), St. Paul Mercury Insurance Co. (St. Paul Mercury), and Blaine Lawson in connection with the purchase of a 2004 Western Star tractor truck. The tractor had been involved in a serious accident in November 2003. Storie purchased the vehicle from Duckett in June 2004. In his complaint, Storie alleges the defendants made fraudulent and negligent misrepresentations and omissions of fact with respect to the sale of the Western Star tractor. Storie also alleges the defendants violated applicable law by failing to apply for a salvage title before selling the vehicle. The defendants deny the allegations.

## II. EXPERT TESTIMONY OF ROBERT CARMON

On April 30, 2007, Robert Carmon prepared an expert report for plaintiff Storie. (Doc. 59, Ex. 1 at 2.) Carmon is the president and owner of CBC and Company, a business that appraises the cost to insurance companies of repairing damaged vehicles. (Id.; Doc. 55, Ex. 3 at 9.) In his expert report, Carmon rendered four opinions upon which he plans

to testify at trial. (Doc. 59, Ex. 1 at 1.) In his professional opinion, Carmon believes:

> (1) The truck sold to Larry Storie had been damaged to the extent that the total cost of repairs to rebuild or reconstruct the truck to its condition immediately before it was damaged for legal operation on the roads or highways exceeded seventy-five percent of the fair market value of the truck immediately preceding the time it was damaged;
>
> (2) The truck sold to Larry Storie had not been adequately repaired prior to sale, that it contained numerous defects. These defects include excessive paint build up, sanding marks in paint, dirt in paint, ABS does not work properly as the light indicator intermittently comes on, damaged cab mounts, and rear suspension parts damaged. The rear suspension damage makes it hazardous to drive. The truck should have had a salvage title due to the excessive previous damages. It should have been disclosed prior to the sale that it had been rebuilt.
>
> (3) The truck had an actual fair market retail value of $40,000 on the date it was sold to Larry Storie.
>
> (4) The truck's cab was never replaced with a new one, but had been rebuilt.

(Id.)

In reaching these conclusions, Carmon relied on: (1) the complaint; (2) deposition transcripts of James Ward and Blaine Lawson; (3) the bill of sale; (4) the Tennessee title; (5) the Carfax vehicle history report; (6) the report and photographs of the Indiana Highway Patrol; (7) the appraisal report; (8) repair orders from Duckett; (9) the invoice of West Side Wrecker Service; (10) St. Paul Mercury's file materials; (11) conversations with Larry Storie and his attorney, Mitch Stoddard; (12) actual inspection of the vehicle; and (13) pictures of the vehicle. (Id. at 1-2.)

As part of his qualifications, Carmon describes himself as an automobile mechanic, body repair specialist, and appraiser. He states he is I-Car certified, has been certified as an automobile mechanic since 1980, and has been certified for bodywork since the 1970s. Finally, Carmon notes he owned his own body and mechanic shop for 16 years. (Id. at 2.)

-2-

## III. MOTIONS TO STRIKE

Duckett and Lawson offer several reasons for striking Carmon's opinions. In general, they attack Carmon's methods and qualifications, arguing his opinions are unreliable, lack an objective analysis, and exceed his expertise. The defendants also attack the substance of his opinions. They argue Carmon's opinions provide improper statements of the law, reach legal conclusions, and are false or fabricated.

In its memorandum, St. Paul Mercury argues the plaintiff has failed to establish that Carmon is qualified to provide any of the opinions contained in his export report. Specifically, it argues Carmon has no relevant experience and that his opinions provide no more than legal conclusions. It also notes that Carmon's opinions are unreliable under Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), with Carmon failing to provide any explanation or analysis for his conclusions.

In response, Storie argues Carmon's testimony falls within the scope of Daubert and Federal Rule of Evidence 702. In particular, he notes he has established that Carmon is a qualified expert, possessing a specialized and technical knowledge within the field of automotive mechanics. In addition, Storie argues Carmon consulted a number of sources before reaching his conclusions.

## IV. DISCUSSION

The law recognizes many different kinds of experts, and many different kinds of expertise. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150 (1999). "The proficient garage mechanic is an expert in his field even though a Ph.D. may be the last thing he ever hoped to acquire; the trained and experienced television repairman is just as surely an expert as the most renowned neurosurgeon." Jon R. Waltz & Roger C. Park, Evidence 803 (10th ed. 2004). In short, an expert is someone who has developed skill or knowledge in a particular subject, either through education or experience, so that he may form an opinion which will assist the fact-finder. Black's Law Dictionary 600 (7th ed. 1999).

Not all expert testimony is admissible. See Fed. R. Evid. 104(a), 702; Fed. R. Evid. 704 advisory committee's note. As an initial matter,

-3-

the proponent of the evidence must show the court that the expert testimony is both reliable and helpful, and the expert is qualified to be a witness. Fed. R. Evid. 104(a); Fed. R. Evid. 702 advisory committee's note. This showing must be made by a preponderance of the evidence. Bourjaily v. United States, 483 U.S. 171, 176 (1987). Rule 702 guides the court in making these initial determinations.

Under Rule 702, the court must first find that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702. If the court makes this finding, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion, provided (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principals and methods reliably to the facts of the case. Id.

Rule 702 incorporates the rulings of the Supreme Court's decisions in Kumho Tire and Daubert. Fed. R. Evid. 702 advisory committee's note. In these cases, the Supreme Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony. Kumho Tire, 526 U.S. at 141; Daubert, 509 U.S. at 597. This responsibility extends to all expert testimony – not just scientific testimony. Kumho Tire, 526 U.S. at 141.

In exercising this gatekeeping responsibility, the trial judge must follow the standards of Rule 702. Fed. R. Evid. 702 advisory committee's note. The trial judge does not, however, need to always apply the four factors found in Daubert.[1] Kumho Tire, 526 U.S. at 140. In cases concerning non-scientific expert testimony, "the factors identified in Daubert may or may not be pertinent" in assessing the expert's qualifications and the reliability of his testimony. Id. at 150.

---

[1] In Daubert, the Supreme Court listed four non-exclusive factors for assessing the reliability of scientific expert testimony: (1) whether the expert's theory or technique can or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known rate of error or standards controlling its operation; and (4) whether the theory enjoys general acceptance within the relevant scientific community. Daubert, 509 U.S. at 592-94.

-4-

Indeed, "the test of reliability is 'flexible,' and Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case." Id. at 141; see also Jauregui v. Carter Mfg. Co., 173 F.3d 1076, 1084 (8th Cir. 1999); Tyus v. Urban Search Mgmt., 102 F.3d 256 (7th Cir. 1996) (noting that the ways of demonstrating expertise will vary by field). Rather, the law grants a district court broad latitude in deciding how to determine reliability. Kumho Tire, 526 U.S. at 142.

Non-scientific experts should receive the same degree of scrutiny regarding reliability as their scientific counterparts. Fed. R. Evid. 702 advisory committee's note; see Watkins v. Telsmith, Inc., 121 F.3d 984, 991 (5th Cir. 1997). As the rule itself states, all expert testimony must be the product of reliable principles and methods. Fed. R. Evid. 702. The expert must explain how he arrived at his conclusions. Fed. R. Evid. 702 advisory committee's note. The trial court may not simply take the expert's word for it. Id.; Thomas v. City of Chattanooga, 398 F.3d 426, 432 (6th Cir.), cert. denied, 546 U.S. 814 (2005).

While expert testimony must be reliable and grounded in a proper methodology, the testimony need not be determined correct before received into evidence. Dodge v. Cotter Corp., 328 F.3d 1212, 1222 (10th Cir. 2003); Bonner v. ISP Techs. Inc., 259 F.3d 924, 932 (8th Cir. 2001). The trial court's gatekeeping role is not intended to replace the adversary system and the factfinders' role. Fed. R. Evid. 702 advisory committee's note. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction of the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony. Shuck v. CNH Am. LLC, No. 06-4180, 2007 WL 2363189, at *4 (8th Cir. Aug. 21, 2007). The rule is one of admissibility rather than exclusion. Id.; see also Williams v. Wal-Mart Stores, Inc., 922 F.2d 1357, 1360 (8th Cir. 1990) ("Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility.").

## A. Carmon's First Opinion

In their memoranda, the defendants raise several objections to Carmon's first opinion. This opinion, they argue, provides an improper statement of the law, is unreliable, and not based on any objective analysis. The defendants also generally object to Carmon's expertise and qualifications.

A witness must be qualified, by skill, training, experience, or education, to serve as an expert and assist the fact-finder in understanding the evidence or determining the facts in issue. Fed. R. Evid. 702. Carmon has extensive experience in repairing automobiles and appraising those repairs. He is currently the president of CBC and Company, a business that appraises the cost to insurance companies of repairing damaged vehicles. Around thirty percent of the company's repair appraisals involve trucks. (Doc. 55, Ex. 3 at 9.) With this background, Carmon has the relevant qualifications and expertise to render his first opinion. See Messana v. Mercedes Benz of N. Am., Inc., No. 99 C 0912, 2001 WL 1345956, at *2 (N.D. Ill. Oct. 31, 2001) (qualified experts could testify to value of Mercedes Benz even though neither expert dealt with Mercedes automobiles on a regular basis).

No matter how qualified, an expert's opinions must be based on sufficient data and be the product of reliable methods. Fed. R. Evid. 702. Before the accident, Carmon valued the truck at $85,000 to $89,000. (Doc. 55, Ex. 3 at 15.) In its memorandum, Duckett states that St. Paul Mercury valued the truck at approximately $89,000 before the accident, and all of the parties agree Storie purchased the truck for $89,500. (Doc. 1 at 4-5; Doc. 55 at 2; Doc. 58 at 1-2.) In his deposition, Carmon notes that he used the NADA (National Automobile Dealers Association) guide and the website www.truckpaper.com to calculate the pre-accident value of the truck. (Doc. 55, Ex. 3 at 15.)

The NADA book values are a reliable and helpful source for determining a car's value. In re Roberts, 210 B.R. 325, 330 (Bankr. N.D. Iowa 1997). NADA is "universally recognized as relevant and material evidence of the value of used automobiles." In re Marshall, 181 B.R. 599, 604 n.9 (Bankr. N.D. Ala. 1995); see also in re Singer, 368 B.R.

435, 444 (Bankr. E.D. Pa. 2007) (taking judicial notice of NADA values).[2]

In calculating the cost of repair, Carmon relied on an appraisal performed by Autobody Damage Appraisers. (Doc. 55, Ex. 3 at 6.) This "appraisal report" is listed in Carmon's expert report. (Doc. 59, Ex. 1 at 1.) According to Carmon, the report stated $70,203.73 would be required to repair the truck. (Doc. 55, Ex. 3 at 7.) Despite his background in appraising repair costs, Carmon made no independent analysis of the cost to fix the truck. (Id. at 16.)

Still, the rules of evidence do not require an expert to personally prepare all the documents supporting his opinion. Fed. R. Evid. 703; Gussack Realty Co. v. Xerox Corp., 224 F.3d 85, 94 (2d Cir. 2000) ("[A]n expert may rely on data that [he] did not personally collect."). An expert can testify to an opinion formed from information handed to him rather than developed by him. In re James Assocs., 965 F.2d 160, 172 (7th Cir. 1992). In forming his opinion, an expert may rely on otherwise inadmissible documents, as long as the documents are of a type reasonably relied upon by experts in the particular field. Fed. R. Evid. 703; Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc., 125 F.3d 1176, 1182 (8th Cir. 1997). Rule 703 also requires that the information relied on be viewed as reliable by an independent, objective standard, and not just the opinion of the testifying witness. TK-7 Corp. v. Estate of Barbouti, 993 F.2d 722, 733 (10th Cir. 1993).

In this case, the appraisal report was prepared for St. Paul Mercury by a party unaffiliated with the plaintiff, and well before the current litigation. See Daubert v. Merrell Dow Pharms., Inc., 43 F.3d 1311, 1317 (9th Cir. 1995) (noting courts should consider whether an opinion was developed through research or solely for litigation). At the hearing, the parties agreed that, under the circumstances, experts in Carmon's field would rely on and consider another appraiser's damage estimate in place of conducting their own independent appraisal. See Indian Coffee

---

[2] Given the authority of the NADA values and the relative agreement concerning the pre-accident value of the truck, Carmon has sufficient expertise to testify to the pre-accident value of the truck. Calculating the after-accident value of the truck requires greater expertise, as explained below.

Corp. v. Procter & Gamble Co., 752 F.2d 891, 894 (3d Cir. 1985) (under Rule 703, "the district court must make a factual inquiry and finding as to what data experts in the field find reliable."); see also Wilmington Hospitality, LLC v. New Castle County, No. 03C-07-213 MMJ, 2007 WL 1248513, at *7 (Del. Super. Ct. Apr. 26, 2007) (deciding whether an expert who made no independent appraisal could rely on an earlier appraisal performed by another company). Once an expert states that his testimony rests on data relied on by experts in his field, Rule 703 is generally satisfied. DeLuca by DeLuca v. Merrell Dow Pharms., Inc., 911 F.2d 941, 944 (3d Cir. 1990). Because the Rules of Evidence permit an expert to rely on the information collected by another, Carmon's first opinion is reliable under Rule 703.

Putting aside the question of reliability, an expert's opinion may not invade the province of the jury. See Robertson v. Norton Co., 148 F.3d 905, 908 (8th Cir. 1998). Simply put, experts may not render legal conclusions. In re Acceptance Ins. Cos. Sec. Litig., 423 F.3d 899, 905 (8th Cir. 2005). A trial court must exclude opinion testimony that gives the jury no information other than what the witness believes the verdict should be. Williams, 922 F.2d at 1360; United States v. Scop, 846 F.2d 135, 140 (2d Cir. 1988) ("It is not for witnesses to instruct the jury as to applicable principles of law, but for the judge."). That said, expert testimony may embrace issues to be decided by the fact-finder. Fed. R. Evid. 704(a); Williams, 922 F.2d at 1360.

Using the NADA book and the appraisal report, Carmon performed a simple mathematical calculation to reach his stated conclusion. The cost of the repairs, roughly $70,000, is indeed greater than seventy-five percent of $89,000 (which is $66,750). This calculation did not require any legal analysis and does not state a legal conclusion. Admittedly, Carmon's first opinion quotes, verbatim, the language of the Missouri statute defining a salvage vehicle. Cf. (Doc. 59, Ex. 1 at 1), with Mo. Rev. Stat. § 301.010. Under the statute, a salvage vehicle is a vehicle, which has been damaged,

> to the extent that the total cost of repairs to rebuild or reconstruct the vehicle to its condition immediately before it was damaged for legal operation on the roads or highways

-8-

exceeds eighty percent of the fair market value of the vehicle
immediately preceding the time it was damaged.[3]

Mo. Rev. Stat. § 301.010.

The line between a legal conclusion and an ultimate issue is certainly fine. See Fed. R. Evid. 704 advisory committee's note. Even quoting legal language does not necessarily transform an opinion into a statement of law. See id. For instance, "Did T have capacity to make a will?" calls for a legal conclusion. Id. But "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed under the federal rules. Id. Drawing on this example, Carmon's opinion falls into the latter category rather than the former, and therefore does not invade the province of the jury.

The motions to strike are denied as to Carmon's first opinion.

### B. Carmon's Second Opinion

In their memoranda, the defendants raise several objections to Carmon's second opinion. This opinion, they argue, provides legal conclusions, contains no objective analysis, and goes beyond the scope of his expertise. The defendants also generally object to Carmon's expertise and qualifications.

As noted above, the court must exclude expert testimony if it is so couched in legal conclusions that the opinion simply instructs the fact-finder as to what the verdict should be. Williams, 922 F.2d at 1360; Scop, 846 F.2d at 139, 140. In this case, Carmon's second opinion also contains statements couched in legal conclusions. According to the complaint, the defendants failed to apply for a salvage title in violation of Indiana and Missouri law. (Doc. 1 at 2.) Since the application for a salvage title is alleged to be a matter governed by state law, Carmon may not conclude, "[t]he truck should have had a salvage title due to the excessive previous damages."

---

[3] On July 13, 2007, the Missouri legislature changed the statute to read eighty percent instead of seventy-five percent. 2007 Mo. Legis. Serv. 82.

The complaint also alleges the defendants violated the law by failing to disclose the truck's accident history before selling the truck. (Id.) Since the failure to disclose a prior accident is also alleged to violate state law, Carmon may not use his testimony to conclude, "[i]t should have been disclosed prior to sale that [the truck] had been rebuilt."

The motion to strike is granted as to these two statements.

Carmon's other statements are proper. Carmon has extensive experience in car bodywork and automotive repairs. He owned his own body and mechanic shop for sixteen years, up until 2000, and has been certified in mechanics and bodywork. (Doc. 55, Ex. 3 at 9, 20.) Although Carmon's current occupation concerns appraisals, he remains qualified to render opinions as to any defects the truck may have. See United States v. 14.38 Acres of Land, 80 F.3d 1074, 1079 n.4 (5th Cir. 1996) (while expert's career change "may be fodder for cross examination, it hardly constitutes grounds for finding him unqualified to testify.").

Carmon spoke with Storie to find out what sort of problems he was experiencing with the tractor. (Doc. 55, Ex. 3 at 13.) Beyond this conversation, Carmon conducted his own inspection of the vehicle for an hour and a half, taking notes of his observations. He also examined photographs of its purported problem areas. (Id. at 14.) During his inspection he noticed excessive paint build-up on the back cab. In his opinion, trucks normally have three to four mills of paint, and today's new cars and trucks have between 1.2 and 3 mills. (Id. at 16-17, 25.) In this case, he noted the rear panel on Storie's cab had 16 mills of paint, the rear side panel had 1.2 mills, the hood had 4.5 mills, and the right side had 4.5 mills. (Id. at 16-17, 25.) Carmon measured the build-up with a mills gauge; paint build-up cannot be measured by the naked eye. (Id. at 16-17.)

Carmon found sanding marks and dirt in the paint of the cab and on the hood, and took photographs of these findings. (Id. at 17.) Next, he noticed the paint on the cab mounts was cracking. In his opinion, the paint on the cab mounts cracks when the parts are damaged. (Id. at 18.) Beyond the paint damage, he found the vehicle's suspension parts were damaged. Carmon identified a strut rod on the passenger-side rear axle

as the source of the suspension damage. Suspension damage causes tire wear and can make a vehicle hazardous to drive. Since Storie reported wearing through tires quickly, Carmon believes the suspension damage dates back to the time of sale. (Id.)

Observation coupled with expertise generally may form the basis of an admissible expert opinion. Shuck, 2007 WL 2363189, at *5. "[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience." Kumho Tire, 526 U.S. at 156. In this case, Carmon has personally inspected the vehicle, photographed the areas of concern, inspected past photographs of the vehicle, and spoken with Storie about his experiences with the tractor. This is a reliable method for reaching the conclusions contained in the expert report. Carmon may testify to the defects he found during the course of his inspection.

Carmon may not, however, express his opinion that the vehicle's anti-lock braking system (ABS) does not work properly. While he owned the truck, Storie indicated that the ABS warning light came on. During his inspection, Carmon never saw the ABS light indicator come on. In addition, he never inspected the vehicle's ABS to determine if the problem lay with the braking system or simply with the wiring of the light. (Doc. 55, Ex. 3 at 17-19.) Since Carmon did not inspect the ABS, he may not testify to any problems with the braking system.

The motions to strike are granted in part and denied in part with respect to Carmon's second opinion.

### C. Carmon's Third Opinion

In their memoranda, the defendants raise several objections to Carmon's third opinion. This opinion, they argue, is not based on objective data, is unreliable, and goes beyond the scope of Carmon's expertise. (Docs. 55, 59.)

Valuing a used motor vehicle is a difficult endeavor. See In re Smith, 313 B.R. 785, 791 (Bankr. N.D. Ind. 2004). A court may therefore rely on experts to determine the value of used and defective vehicles. See Schimmer v. Jaguar Cars, Inc., 384 F.3d 402, 406 (7th Cir. 2004). But to really be useful in the valuation process, "such an expert would

-11-

have to have broad experience with the sales prices received for vehicles essentially comparable to that being valued." In re Smith, 313 B.R. at 791. However, the odds of an expert actually possessing significant experience with sales of vehicles with similar characteristics - for example, mileage, interior and exterior conditions, repair needs, and accessories - to those of the vehicle in question "are extraordinarily remote." Id.

Given these realities, Carmon does not have the expertise required to give reliable or helpful testimony about the value of the vehicle on the date it was sold. As part of its gatekeeping function, a court must not allow an expert witness to testify to matters beyond the scope of his expertise. Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 715 (8th Cir. 2001). The court must determine not only whether a witness is an expert, but how far that expertise carries. Id. In this case, Carmon's expertise extends to bodywork and mechanics, and the cost of repairing damaged vehicles, but not to valuing used and damaged vehicles. He is not an automobile dealer and has not indicated he has any experience in pricing used truck tractors - either by buying or selling them. (Doc. 55, Ex. 3 at 22-23; Doc. 59, Ex. 1 at 2.) And this time, no publication can give a quick figure for the after-accident and moment of sale values of the subject vehicle. (Id. at 16, 22.)

Expertise in one area of the motor vehicle field does not necessarily translate into expertise in another. See Smith v. Freightliner, LLC, 239 F.R.D. 390, 393 (D.N.J. 2006) ("Although [the expert] has experience in assessing the value of motor vehicles, he does not have experience or expertise regarding the possible impairment of the use or safety of the vehicle."); Finch v. Ford Motor Co., No. 03 C 4243, 2004 WL 2066917, at *1 (N.D. Ill. Aug. 27, 2004). In Finch, the plaintiff's expert had thirty years of experience repairing and inspecting a wide variety of vehicles. Finch, 2004 WL 2066917, at *1. He had served two years inspecting Ford vehicles as part of the Ford Consumer Appeals Board, and had operated his own vehicle inspection service for over a decade. Id. Despite this experience, the district court found the plaintiff had failed to show the expert was "qualified to testify about vehicle valuation . . . ." Id. Applying Finch and

-12-

Freightliner, Carmon does not have sufficient expertise to testify about the value of the truck after the accident and at the time of sale.

The motions to strike are granted as to Carmon's third opinion.

### D. Carmon's Fourth Opinion

In their memoranda, the defendants raise several objections to Carmon's fourth opinion. This opinion, they argue, is not based on any known methodology, is completely unreliable, and is fabricated.

As noted above, expert testimony must be reliable and grounded in proper methods and principles, but it need not be proven correct before trial. Dodge, 328 F.3d at 1222; Bonner, 259 F.3d at 932. The trial court's gatekeeping role is not intended to supplant the adversary system. Fed. R. Evid. 702 advisory committee's note. In his fourth opinion, Carmon reports the truck's cab was not replaced, but merely rebuilt. In support, Carmon points to the paint build-up on the cab and scratches in the body panels. The presence of sanding marks and excessive paint, in his opinion, indicates someone performed body work on the cab. (Doc. 55, Ex. 3 at 23.)

To contradict his theory, the defendants point to photographs of a Western Star cab resting in the yard of Duckett Truck Centers, and bearing the original serial number of Storie's truck. (Id.) In a signed affidavit, David Ryman, the body shop manager for Duckett, notes he was personally in charge of supervising the repairs to Storie's tractor. He states the existing damaged cab was removed and replaced with a new cab, built by the vehicle's manufacturer, and with the same serial number as the original cab. He swears that Storie's cab was not repaired and points to invoices for the new cab and photographs of the old cab. (Doc. 55, Ex. 5 at 1-2.) Carmon does not believe the photographs necessarily prove the entire cab was replaced. In his opinion, certain portions of Storie's cab might still have been rebuilt. (Doc. 55, Ex. 3 at 23.)

Given the photographs and Ryman's affidavit, Carmon's testimony seems to rest on tenuous grounds. Still, Carmon is a qualified expert in bodywork and the scratches and excess paint provide sufficient facts on which he may base his opinion. See Grabinski v. Blue Springs Ford Sales, Inc., 136 F.3d 565, 568 (8th Cir. 1998) (expert testified that

signs of repainting and poor door fit indicated the vehicle had been involved in an accident). Carmon has personally inspected, measured, and photographed the relevant portions of the cab. His testimony on the subject rests on reliable methods, which have been applied to the facts of the case. See Fed. R. Evid. 702. Carmon's opinion does not have to be determined to be correct to be admissible into evidence - it only needs to be reliable. Dodge, 328 F.3d at 1222; Bonner, 259 F.3d at 932. As Daubert notes, vigorous cross-examination, contrary evidence, and instruction on the burden of proof - rather than wholesale exclusion - remain the traditional and appropriate methods for attacking shaky but admissible evidence. Daubert, 509 U.S. at 596. In light of these precedents and the liberal policy of admission, Carmon may testify that he believes the cab was rebuilt and not replaced.

The motions to strike are denied as to Carmon's fourth opinion.

## V. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that the motions of defendants Duckett Truck Center, Inc. and Lawson (Doc. 54) and St. Paul Mercury Insurance Co. (Doc. 57) to strike the opinions of plaintiff's expert Robert Carmon are granted in part and denied in part. The motions are granted as to Carmon's third opinion, and part of his second opinion. The motions are denied as to Carmon's first opinion, fourth opinion, and part of his second opinion.

/S/ David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on December 14, 2007.

-14-